[No. 12245. Department One. March 22, 1915.]

THOMAS MORGAN, *Appellant*, v. JOHN B. HART *et al.*, *Respondents*.[1]

JUDGMENT—RES JUDICATA—QUESTIONS CONCLUDED. An action for the recovery of damages resulting from the breach of a contract relating to the financing and control of a corporation is barred by the judgment of dismissal "with prejudice" in a former action involving the same parties and subject-matter, wherein it was sought to compel an accounting for moneys advanced by some of the parties for the purpose of acquiring an interest in the corporation.

SAME. The fact that plaintiff in the second suit was joined as a defendant in the first suit, along with his present adversary, for the reason that he refused to join as plaintiff, would not affect the efficacy of judgment in the prior equitable suit as *res judicata*, since his rights adverse to the present defendants could have been as fully adjusted therein in his capacity as defendant as if he had been one of the plaintiffs.

SAME. The fact that plaintiff has introduced in his complaint the element of fraud of the principal defendant in bringing about a settlement following the prior suit, is not the injection of a new issue, but merely the anticipation of a defense which might be made against the claims of plaintiff, and hence cannot be considered as affecting the *res adjudicata* of the judgment in the former suit involving the violation by the principal defendants of the original contract between all the parties.

[1]Reported in 147 Pac. 26.

JUDGMENT—DISPOSITION OF CASE. A judgment of dismissal with prejudice is sufficiently certain to form a bar to a subsequent action involving the same parties and issues, as it in effect determined that the defendant was not accountable to the adverse parties therein.

JUDGMENT—CONCLUSIVENESS — PARTIES CONCLUDED. The fact that the plaintiff in the second suit did not file an answer or cross-complaint in the former action would not change the force and effect of a judgment of dismissal with prejudice therein, where it appears from the record that he' was informed of the allegations of the complaint and consented to the rendering of a judgment with prejudice upon the issues tendered.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered July 10, 1914, upon the pleadings in favor of the defendants, in an action on contract, tried to the court. Affirmed.

*E. C. Million* and *W. H. Abel*, for appellant.

*Hughes, McMicken, Dovell & Ramsey*, for respondents.

PARKER, J.—The plaintiff, Thomas Morgan, commenced this action in the superior court for King county seeking recovery of damages against John B. Hart, claimed to have resulted from the alleged breach of a contract relating to the financing and control of the Bella Coola Development Company, a corporation, of Seattle, Washington, the stock of which Hart and his associate, Williams, had acquired control, and in which other parties to the contract were by its terms to have an interest. The other parties to the contract were, by Morgan, made parties defendant to this action because of their refusal to join as plaintiffs. In his answer, Hart pleaded as his third affirmative defense that there had been a former adjudication of the claimed rights of Morgan sought to be litigated in this action. Morgan demurred to this plea, which demurrer was by the court overruled. Thereupon Morgan filed his reply to the new matter set up in the affirmative defenses, including the plea of former adjudication. Thereupon Hart moved for judgment upon the pleadings, resting his motion particularly upon his plea of former

adjudication and the insufficiency of Morgan's reply thereto.
The case being submitted to the court upon this motion, it
was granted, and judgment rendered accordingly in favor of
Hart.  No complaint is made that Morgan was not given an
opportunity to amend his reply.   He is manifestly standing
upon his demurrer to Hart's plea of former adjudication and
upon his reply thereto.   Evidently he rests principally upon
his demurrer to the plea of former adjudication.   From this
disposition of the cause, Morgan has appealed to this court.

On December 23, 1905, John B. Hart, as party of the first
part, and Thomas Morgan, James M. Hackett and E. B.
Shields, as parties of the second part, entered into a contract
looking to the financing, control, and their acquiring inter-
ests in the capital stock of the Bella Coola Development Com-
pany.   Facts material to this controversy appearing in the
recitals and conditions of this contract, which is made part
of the complaint, in substance, are as follows:

The company has a paid up capital of 1,000,000 shares of
the par value of one dollar each.   It then owned certain valu-
able timber rights in British Columbia.   Hart and one Wil-
liams then owned or controlled all of the capital stock of the
company.   It then had certain obligations and requirements
to perform, calling for the expenditure of a large sum of
money, which it was necessary to provide for the discharge
of in order to perfect its timber rights in British Columbia.
The company then also needed additional funds to construct
manufacturing plants and develop its business.   Following
the recital of these facts in the contract, it was thereby
agreed, in substance, as follows:   The parties of the second
part were to furnish to be expended for these necessary pur-
poses, $45,000 as a loan, to be repaid in money or mortgage
bonds of the company which it was contemplated might be
issued in the future.   Hart was to cause to be transferred and
delivered to Morgan 75,000 shares of the capital stock of
the company; to Hackett, 38,000 shares; and to Shields, 38,-
000 shares.   Hart was to retain for himself 150,000 shares,

and Williams was to retain for himself 150,000 shares. The
company was then agreed to be indebted to Hart and Williams
in the sum of $70,000, which was to be paid in money or mort-
gage bonds of the company should they be issued as contem-
plated. Hart was to hold the remainder of the capital stock
of the company and sell the same to raise funds to promote
its business, and "should all the remainder of the capital
stock of said company not be used for the purpose of ac-
quiring money with which to construct the manufacturing
plants and industries as herein mentioned or as may be agreed
upon in the future, then said remainder of said capital stock
of said company shall be divided equally between all the
parties hereto."

The contract does not specify what portion of the $45,000
was to be furnished by each of the second parties thereto,
this being by the terms of the contract a joint obligation.
The rights of Morgan, Hackett and Shields, as parties of the
second part under this contract, upon their performance of
the conditions thereof as therein specified, may be summar-
ized as follows:

(1)  They would be entitled, each, to the specified num-
ber of shares of the capital stock of the company.

(2)  They would be entitled to repayment of the moneys
advanced by them in cash or bonds of the company.

(3)  Each would be entitled to his proportion of the re-
maining shares of the capital stock, not necessary to be sold
by Hart for the promotion of the company's business. Other
facts appearing in the complaint, in so far as they are neces-
sary to be noticed here, are the following:

"Immediately after entering into said agreement the de-
fendant Hackett paid to said defendant Hart the sum of
$15,500, and the defendant Shields paid to said defendant
Hart the sum of $5,500, and that the plaintiff paid to said
Hart the sum of $15,000. That at the time said plaintiff
paid said sum of $15,000 to said Hart, it was agreed between
the plaintiff and said defendant Hart that the said sum would

be and was received as full performance of said contract on the part of this plaintiff."

The money so paid to Hart was expended by him in the interest of the company, as contemplated in the contract. The complaint continues:

"The said defendant Hart has at all times refused to deliver to this plaintiff or to said Hackett and Shields any of the stock of said company or give them any notes or bonds or any other evidence of indebtedness, and has further at all times refused to give plaintiff an accounting of said monies, or otherwise to inform the plaintiff as to the method and manner in which the same has been spent.

"The said defendant Hart, was, at the time of the entering into said contract, and ever since has been, a director and president of said corporation, Bella Coola Development Company, and the said Hart has obtained and retained all of the stock of said corporation."

On or about the 23d day of October, 1909, Hart caused to be transferred to the Ocean Falls Company, Ltd., a British Columbia corporation, all of the assets of the Bella Coola Development Company, receiving therefor shares of stock of the Ocean Falls Company, Ltd., and cash, which he has retained. In April, 1910, a settlement was had between Hart and Morgan as to their respective rights, Morgan receiving in settlement certain shares of preferred stock of the Ocean Falls Company, which settlement, it is alleged, was induced by the false and fraudulent representations on the part of Hart. The complaint continues:

"That the said Ocean Falls Company, Ltd., have issued bonds to the amount of $3,000,000, of which have been sold and are still outstanding the sum of $1,750,000, and that the said company is indebted in addition thereto over the sum of $400,000 and that its stock, both common and preferred, have become valueless and it is insolvent.

"That the defendants, James M. Hackett, E. B. Shields and A. E. Williams, are made parties defendant herein for the reason that they refuse to join as parties plaintiff."

The complaint contains no allegation of damages in any sum, but concludes with a prayer as follows:

"Wherefore plaintiff prays judgment against the defendant Hart, in the sum of $50,000, together with interest thereon at the legal rate, and for his costs and disbursements."

Whether we regard this action as and for an accounting or for recovery of damages, Morgan is manifestly resting his claimed rights as against Hart upon the theory that Hart has ignored his rights under the contract of December 23, 1905, and proceeded to dispose of the property of the Bella Coola Development Company and appropriate the proceeds to his own use as though Morgan no longer had any rights under that contract. The matter of the alleged settlement of the differences between Hart and Morgan, and the alleged fraud practiced by Hart therein, does not go to the main controversy, but only anticipates a defense which Hart might make against Morgan's claims. So the problem here is, do the admitted facts, as disclosed by the pleadings in this case, show a former adjudication adverse to Morgan upon his claimed rights which he seeks to enforce in this action.

We now notice the uncontroverted facts appearing in the allegations of Hart's third affirmative defense, being his plea of former adjudication. On October 6, 1907, Hackett and Shields commenced an action in the superior court for King county against Hart, Morgan and Williams and the Bella Coola Development Company, seeking an accounting and an adjustment of the rights and equities of all parties to that action touching their rights under the contract of December 23, 1905, and their relations to the Bella Coola Development Company. The facts appearing by the allegations of the complaint in that action, made part of Hart's plea of former adjudication in this action, so far as necessary to be here noticed, may be summarized as follows:

The contract of December 23, 1905, is set out in that complaint in full, so there appears therein all the facts.

shown by the recitals and conditions of that contract as shown by the complaint in this action. The payment of the different sums to Hart by Morgan, Hackett and Shields in pursuance of the terms of the contract was alleged in that complaint as in this complaint. The expenditure of this money by Hart in promoting the interests of the company, as contemplated by the contract, was alleged in that complaint substantially as in this complaint, though the proper expenditure of all the money is challenged in some respects. Other allegations, including the prayer of the complaint, are as follows:

"That said Hart has refused to deliver or cause to be delivered to either of these plaintiffs or said Morgan any of the stock of said company or to give him any bonds, notes or other evidence of said indebtedness, and has further refused to give the plaintiffs any accounting of the said moneys or to otherwise inform plaintiff as to the method and manner in which the said moneys have been invested, . . .

"That the said Hart has refused at all the times since the execution of said contract to deal with these plaintiffs for the purchase of their logging outfit, and has refused to recognize that plaintiffs have any right under said contract; but on the contrary declare that the plaintiffs have forfeited all rights under said contract or the right to have any of said money repaid to them by reason of the failure of the plaintiffs and the said Morgan to pay the full sum of $45,000 mentioned in said contract.

"That the said Hart, for the purpose of inducing these plaintiffs to enter into said agreement, did falsely represent to these plaintiffs that the said company was indebted in the amount of $4,000; and that it was necessary to settle other obligations to the amount of $4,000; and that these defendants relying upon said representations signed said contract and advanced said money, but they have been unable ever since to obtain from said Hart a statement as to such indebtedness and such obligations, and allege the fact to be that there was no indebtedness owing by said company, nor any obligations to be paid at the time of entering into said agreement.

"That said Hart has refused to co-operate with the plaintiffs and said Morgan in an effort to raise the balance of said money.

"That at the time of entering into said agreement, the said Hart falsely represented to plaintiffs that said company was indebted to him, the said Hart, in the sum of $70,000, and that it was indebted to the defendant Williams in the sum of $70,000, while in truth and in fact, said company was not indebted to either said Williams or said Hart in any amount whatever.

"That the defendant Hart was at the time of entering into said contract a director and president of said company, and the defendant Williams was at the time of entering into said contract a director and secretary of said company, and that at all times since entering into said contract defendants Hart and Williams have continued to act as such officers and had the sole control and management of the affairs of the defendant company, and have refused to furnish plaintiffs with any information as to the financial condition of the company.

"That in order to adjust the equities between the parties hereto and protect the rights of these plaintiffs, it is necessary that a receiver be appointed for said company and that the defendants and each of them be required to make an accounting showing the items of expenditure by them and each of them in connection with the business affairs of said company, and especially that they be required to furnish plaintiffs with a complete and full accounting of all the moneys which have been paid under said contract.

"That plaintiffs have been unable to get any statement from the said Hart or the said Williams, as to what disposition has been made, if any, of the said capital stock of said corporation.

"That the defendant Thomas Morgan has refused to join with plaintiffs in this action and for that reason he is made the defendant herein.

"Wherefore plaintiffs pray for judgment of this court requiring these defendants to furnish an accounting of all the moneys received by them and all disbursements made of such moneys, in connection with the business affairs of the defendant company, and that they be required to turn over to the plaintiffs their share of the capital stock of said com-

pany, and that the plaintiffs have judgment against the defendant and each of them for whatever may be found owing to the plaintiffs, and that a receiver be appointed for the defendant company to take charge of, manage its affairs and wind them up and that the plaintiffs have any other further and different relief to which they may be entitled."

No answer was filed in that action by any of the defendants, but all parties moved for and consented to the entry of a judgment of dismissal therein "with prejudice," that motion and the stipulation accompanying the same, made a part of Hart's plea of former adjudication in this action, reading, with the signatures thereto, as follows:

"Comes now the defendants and move the court for an order dismissing the above entitled suit with prejudice; the motion being made on the files and records in this cause and on the stipulation below following.

"(Signed)   John B. Hart
"A. E. Williams
"Bella Coola Develop. Co.
"Thos. Morgan
"By John B. Hart
"Attorney for Defendants
"Stipulation

"It is hereby stipulated and agreed by and between the plaintiffs and defendants that the above entitled cause may be dismissed with prejudice."

"(Signed)   J. M. Hackett
"E. B. Shields
"John B. Hart
"A. E. Williams
"Bella Coola Develop. Co.
"By John B. Hart

"I ask for a dismissal of this cause with prejudice.
"(Signed)   Thos Morgan."

This was, in effect, a general appearance by all the parties, including Morgan, as well as a stipulation for the entry of a final judgment therein. Thereafter judgment was entered in that action, made part of Hart's plea of former adjudication in this action, as follows:

"This cause coming on regularly for hearing on the motion to dismiss as made by the defendants, which is based on the files and records of this cause and on the stipulation entered into between the plaintiffs and the defendants and the court having duly considered the motion, and being fully advised in the premises,

"It is now and here ordered, adjudged and decreed:

"That the above entitled cause be and the same is now and here dismissed with prejudice. It is further ordered, adjudged and decreed that neither party recover costs herein.

"Done in open court this 21st day of April, 1910."

These two complaints, it seems to us, plainly state the same grounds for relief as against Hart. They were both manifestly framed upon the theory that Hart was liable to Morgan, Hackett and Shields, as parties of the second part to the contract of December 23, 1905, because of his violation of the terms of that contract by ignoring their rights thereunder. In other words, both of these complaints seek to secure rights under this contract; and this we think would be true, though the first action seeks an accounting and the second should be regarded as an action for damages only. In both, the right for relief is rested upon the contract and the same wrongful acts of Hart done in violation of the rights of Morgan, Hackett and Shields, the parties of the second part thereto. That the judgment of dismissal in that action, being "with prejudice," was a final adjudication in Hart's favor as to the claims made against him by Hackett and Shields in the former action is, of course, plain. It is insisted, however, that the judgment is not a final adjudication as against Morgan, this plaintiff. The argument seems to be that Morgan was not a party to that action adverse to Hart, being named as a defendant with him. The fact, however, that Hart and Morgan were both named as defendants in that action does not, in view of its nature and the relief there sought, prevent their interests there involved being adverse to each other. The very object, as plainly disclosed by the allegations of the complaint and the prayer

thereof, was to determine the rights of all of the parties thereto, each as against all others, whether plaintiffs or defendants. Morgan was a necessary party thereto, and was made a defendant because of his refusal to join as plaintiff. It was not practicable to have an effective accounting by Hart without considering and determining Morgan's rights under the contract as well as the rights of the others. Indeed, the necessity of Morgan being made a party to that action is not disputed here by his learned counsel, who even considers Hackett and Shields necessary parties to this action by reason of their interest in its subject-matter, since they are made defendants in this action because of their refusal to join as plaintiffs, though the prayer is only for a money judgment against Hart.

In *Corcoran v. Chesapeake & Ohio Canal Co.*, 94 U. S. 741, Justice Miller, speaking for the court, said:

"It is said that Corcoran and his co-trustees, the canal company, and the state of Maryland, were all defendants to that suit, and that as between them no issue was raised by the pleadings on this question, and no adversary proceedings were had.

"The answer is, that in chancery suits, where parties are often made defendants because they will not join as plaintiffs, who are yet necessary parties, it has long been settled that adverse interests as between co-defendants may be passed upon and decided, and if the parties have had a hearing and an opportunity of asserting their rights, they are concluded by the decree as far as it affects rights presented to the court and passed upon by its decree. It is to be observed, also, that the very object of that suit was to determine the order of distribution of the net revenue of the canal company, and that the Corcoran trustees were made defendants for no other purpose than that they might be bound by that decree."

In *Waldo v. Waldo*, 52 Mich. 91, 17 N. W. 709, Justice Sherwood, speaking for the court, dealing with facts presenting in substance this same problem, said:

"The purpose and object of the bill of complaint in this case is to obtain a decree establishing the title in fee to the

lands therein mentioned, in complainant and Mary Allen as children and heirs at law of deceased. It appears from the record that Mary Allen, in May, 1881, filed her bill of complaint, making the parties to this suit defendants therein, for the purpose of accomplishing the same object sought by the bill in this case; that the case was finally heard on appeal in this court, on the merits, and the complainant's bill dismissed. See *Allen v. Waldo*, 47 Mich. 516.

"From the facts as they now appear before us, the complainant should have joined with his sister as a party complainant in the first suit, but failing to do so, he was properly made a party defendant therein, and as such, is subject to all the legal consequences necessarily resulting therefrom. The complainant was not only a party to that suit and the adjudication therein, but privy in blood and estate with the complainant in the same. Both were alike interested in the subject-matter of the litigation; both claimed under the same conveyance and as heirs at law of the same ancestor. They each claimed, not separate and distinct moieties, but equal, undivided interests in the entire property; and we think that if one is concluded by the final decision made in this court in the former case, then equally so is the other. *Prentiss v. Holbrook*, 2 Mich. 376; *Hale v. Chandler*, 3 Mich. 535; Cooley, Const. Lim. 47-51, and cases cited; 1 Greenl. Ev. §§ 180, 322, 323, 535, 536; Herm. on Estoppel, §§ 46-49, 59.

"The right now claimed by complainant could have been as fully asserted and maintained in the former suit as in this. It was competent for the court in that case, upon the pleadings and such proofs as were proper in the case, to make a decree determining and establishing the rights and interests of each of the parties without the necessity of a cross-bill or other proceeding for affirmative relief. 1 Barb. Ch. Pr. 339; *Thurston v. Prentiss*, 1 Mich. 194; *Elliott v. Pell*, 1 Paige 262; *Jones v. Grout*, 10 Paige 348: The complainant was a necessary party in the first suit—see Story's Eq. Plead. (6th ed.) §§ 72, 150 and cases there cited,— and being such party he was a party to every issue joined and litigated in it that could in any way affect his interests or his rights, and must be concluded by the decree upon those issues, and if he did not maintain his rights the decree is no

less binding so long as he had the opportunity and neglected to do so."

See, also, *Georgia R. & Banking Co. v. Wright*, 124 Ga. 596, 53 S. E. 251; *City of El Reno v. Cleveland-Trinidad Paving Co.*, 25 Okl. 648, 107 Pac. 163, 27 L. R. A. (N. S.) 650; *Louis v. Brown Township*, 109 U. S. 162; 1 Van Fleet, Former Adjudication, page 576.

Counsel for Morgan contend that the issues in this action are materially different from those in the former action, in that in this action Hart is charged with fraud in bringing about a settlement of their differences. We have already noticed that this is nothing more than an anticipation of a defense in the nature of accord and satisfaction which Hart might make against the claims of Morgan. This alleged new element of fraud does not in the least affect the merits of Morgan's claims against Hart. In other words, the merits of Morgan's claims against Hart rest upon Hart's violation of the terms of the contract of December 23, 1905, and are wholly unaffected by this alleged fraudulent settlement; though such settlement might or might not be set aside on account of such fraud. The judgment in the former action is, as we view it, an adjudication on the merits of the claims of all the parties of the second part to the contract, to wit, Hackett, Morgan and Shields, as against Hart. We are to remember that this is not an action or proceeding to set aside the judgment rendered in that action.

Counsel for Morgan also contends that the judgment of dismissal with prejudice, rendered in the former action, is not sufficiently certain as to the respective rights there adjudicated to render the same conclusive upon Morgan as to the issues here presented. We think, however, that that judgment did determine that Hart was not accountable to either of the parties of the second part to the contract of December 23, 1905, to wit, Morgan, Hackett or Shields. That judgment manifestly could not have been rendered

with prejudice, that is upon the merits, in favor of Hart in that action upon any other theory.

Some contention is made by counsel for Morgan rested upon the fact that he did not file any answer or cross-complaint in the former action. We think, however, in view of the nature of that action and the relief there sought, the mere fact of his failure to file a formal answer or cross-complaint therein does not change the force and effect of that judgment. It is plain from the record before us that he was informed of the allegations of the complaint in that action and that he consented to the rendering of a judgment with prejudice upon the issues tendered by that complaint. The decisions above noticed, we think, answer this contention. Our decisions in *State ex rel. Schmidt v. Superior Court*, 62 Wash. 556, 114 Pac. 427, and *Hawkins v. Reber*, 81 Wash. 79, 142 Pac. 432, are in harmony with this conclusion. In the *Schmidt* case, Justice Gose, speaking for the court, quoted with approval from *Martin v. Evans*, 85 Md. 8, 36 Atl. 258, 60 Am. St. 292, 36 L. R. A. 218, as follows:

"Whenever a decree dismissing a bill in equity fails to restrict its own scope, the presumption, according to the great preponderance of decided cases, is that the issues raised by the proceedings have been disposed of on the merits, and they, therefore, become *res adjudicata*."

We conclude that the judgment rendered in the former action "with prejudice," has all the force and effect of a final judgment against Morgan, upon the issues tendered by the complaint therein.

We conclude that the judgment must be affirmed. It is so ordered.

MORRIS, C. J., CHADWICK, MOUNT, and HOLCOMB, JJ., concur.